UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

JUTHER PEREZ,

                    Plaintiff,          11 Civ. 5399 (JGK)

       - against -            OPINION AND ORDER

P.O. ELVIS DURAN,

                  Defendant.

————————————————————————————————

JOHN G. KOELTL, District Judge:

    The defendant, Police Officer Elvis Duran, has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking to dismiss the claims alleged against him by the plaintiff, Juther Perez.  The plaintiff alleges claims for false arrest, malicious prosecution, and denial of the right to a fair trial in violation of 42 U.S.C. § 1983.

    The circumstances surrounding the plaintiff's arrest and prosecution are vigorously disputed by the parties particularly whether Officer Duran had probable cause to arrest the plaintiff and whether Officer Duran truthfully reported the circumstances of the arrest to the prosecutor.  Therefore, the motion for summary judgment must be **denied**.

I.

    The standard for granting summary judgment is well established.  "The court shall grant summary judgment if the

1

movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477
U.S. 317, 322 (1986).  "[T]he trial court's task at the summary
judgment motion stage of the litigation is carefully limited to
discerning whether there are any genuine issues of material fact
to be tried, not to deciding them.  Its duty, in short, is
confined at this point to issue-finding; it does not extend to
issue-resolution."  Gallo v. Prudential Residential Servs. Ltd.
P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).  The moving party
bears the initial burden of "informing the district court of the
basis for its motion" and identifying the matter that "it
believes demonstrate[s] the absence of a genuine issue of
material fact."  Celotex, 477 U.S. at 323.  The substantive law
governing the case will identify the material facts and "[o]nly
disputes over facts that might affect the outcome of the suit
under the governing law will properly preclude the entry of
summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 248 (1986); see also Chepilko v. Cigna Group Ins., No. 08
Civ. 4033, 2012 WL 2421536, at *1 (S.D.N.Y. June 27, 2012).

    In determining whether summary judgment is appropriate, the
Court must resolve all ambiguities and draw all reasonable
inferences against the moving party.  See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>see also</u> <u>Gallo</u>, 22 F.3d at 1223.  Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party.  <u>See</u> <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994); <u>see also</u> <u>Pelayo v. Port Auth.</u>, 893 F. Supp. 2d 632, 634-35 (S.D.N.Y. 2012).


## II.

The plaintiff, Juther Perez, was arrested on February 12, 2011 at approximately 2:45pm in front of 340 Alexander Avenue in the Bronx and charged with criminal sale of a controlled substance in violation of New York Penal Law § 220.39, a Class B felony.  (Pl.'s Resp. to Defs.' Local Rule 56.1 Stmt. ("56.1 Resp.") ¶ 1; Silverberg Decl., Ex. A.)

On the day of his arrest, the plaintiff was in the vicinity of 340 Alexander Avenue to visit a friend.  (Fitch Decl., Ex. A ("Pl. Dep.") at 38; Def.'s Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("56.1 Stmt.") ¶¶ 1, 3; 56.1 Resp. ¶¶ 1, 3.)  The plaintiff parked his car and saw his father, Juther A. Perez, Sr., walking down the street.  (Pl. Dep. at 38; Fitch Decl., Ex. B ("Perez Sr. Dep.") at 8.)  The parties have very different versions of the events that ensued.

**A.**

The plaintiff's version of the events is as follows.  The plaintiff stopped to speak with his father, Perez Sr.  (Pl. Dep. at 38.)  The plaintiff and his father shook hands.  (Pl. Dep. at 38-40.)  According to Perez Sr., he gave the plaintiff a high-five.  (Perez Sr. Dep. at 71.)  The plaintiff testified at his deposition that the handshake with his father could be described as grabbing hands together by "kind of lock[ing] your fingers in each other['s] hands" and "shak[ing] your hands a little bit," and the handshake did not last longer than two seconds.  (Pl. Dep. at 39; see 56.1 Stmt. ¶ 4 ("[the] plaintiff and his father made hand to hand contact, which lasted approximately two seconds").)

The plaintiff testified that when he shook hands with his father, his father did not pass anything to him, the plaintiff did not pass anything to his father, and the plaintiff did not sell anything to his father.  (Pl. Dep. at 104.)  Perez Sr. testified that the only physical contact he had with the plaintiff was a high-five and that the plaintiff did not give him anything during this interaction.  (Silverberg Decl., Ex. C at 71, 74.)

After he saw his father, the plaintiff went into 340 Alexander Avenue, and police officers stopped Perez Sr. at 143rd Street.  (Perez Sr. Dep. at 74.)  Perez Sr. testified that he

4

told the officers that he had drugs on him.  (Perez Sr. Dep. at 79; 56.1 Stmt. ¶¶ 11, 12; 56.1 Resp. ¶¶ 11, 12.)

The plaintiff received a phone call from a friend informing him that his father was being arrested.  (Pl. Dep. at 41, 48.) The plaintiff then took the elevator downstairs to "ask what happened, and hopefully get his [father's] property."  (Pl. Dep. at 41, 48.)  Once the plaintiff left the building, two officers "came and grabbed" him.  (Pl. Dep. at 48.)  The officers searched the plaintiff and seized his phone, keys, and $444 in cash.  (Pl. Dep. at 63-64.)  The plaintiff testified that the defendant, Officer Duran, arrived after other officers had already placed the plaintiff in handcuffs.  (Pl. Dep. at 53, 56-57; 56.1 Resp. ¶ 1.)  The plaintiff testified that he recognized Officer Duran "from around the neighborhood."  (Pl. Dep. at 53.)

### B.

Officer Duran's version of the events is very different. Officer Duran submitted a sworn report of the incident in which he claimed to have observed the plaintiff's father hand the plaintiff "a sum of United States currency, and in exchange, [the plaintiff] handed [his father] a small object," which Officer Duran identified, based on his training and experience, as crack cocaine.  (Fitch Decl., Ex. C.)  At his deposition, Officer Duran testified that on the day of the plaintiff's

5

arrest, Officer Duran saw the plaintiff hand a "clear plastic
bag containing [] powder," to Perez Sr.  (Fitch Decl., Ex. G
("Duran Dep.") at 53.)  Officer Duran also testified that he saw
the plaintiff's father hand the plaintiff cash.  (Duran Dep. at
52-53.)  Officer Cruz, who was also on the scene at the time of
the plaintiff's arrest, testified that he witnessed an "exchange
of green paper with a plastic bag containing a whi[t]e
substance."  (Fitch Decl., Ex. I at 25.)

    Officer Duran testified that while he was witnessing what
he believed to be a drug transaction between the plaintiff and
Perez Sr., Officer Duran called other officers near the site of
the exchange and alerted them to the criminal activity.  (Duran
Dep. at 93.)  Officer Duran testified that he jumped out of his
vehicle and that Perez Sr. "proceeded to run toward the corner
. . . of 143rd Street and Alexander Avenue."  (Duran Dep. at
54.)  Officer Duran testified that other officers in a nearby
vehicle saw Perez Sr. running, stopped him, and told Officer
Duran over the radio, "[h]e has crack cocaine on him."  (Duran
Dep. at 56, 96.)

    Officer Duran testified that when the plaintiff saw Officer
Duran the plaintiff ran toward 340 Alexander Avenue and then
"[p]retty much . . . walk[ed] right out to greet" the officers.
(Duran Dep. at 56.)  Officer Duran contends that he arrested the
plaintiff and recovered $444 in cash from the plaintiff although

6

he mistakenly wrote in the arrest report that Officer Torres had recovered the cash.  (56.1 Stmt. ¶ 1; Duran Dep. at 118.) Officer Duran forwarded the arrest report and other paperwork he prepared in connection with the plaintiff's arrest to the District Attorney's Office.  (Silverberg Decl., Ex. P ¶ 7; see Silverberg Decl., Ex. F.)

### C.

It is clear based on the parties' different versions of the events surrounding the plaintiff's arrest that the parties dispute several key facts including: (i) whether Officer Duran observed any interaction between the plaintiff and his father at all; and (ii) whether the plaintiff and Perez Sr. simply shook hands or gave a high-five, or whether they exchanged money for drugs.  (56.1 Stmt. ¶¶ 4, 5; 56.1 Resp. ¶¶ 4, 5.)  However, the parties generally agree on the events that followed the plaintiff's arrest.

After his arrest, the plaintiff spent two days in Central Booking.  (Pl. Dep. at 77.)  On February 14, 2011, the plaintiff was arraigned in Supreme Court, Bronx County on a criminal complaint signed by Officer Duran that charged the plaintiff with the Class B Felony of Criminal Sale of a Controlled Substance in violation of New York Penal Law § 220.39(1). (Silverberg Decl., Exs. F & K.)  The court released the

plaintiff on his own recognizance and ordered him to return on March 16, 2011, which, as the court noted, was the date on which the plaintiff was also required to return on another matter. (Silverberg Decl., Ex. K at 2.)  The plaintiff complied with the court's order, and appeared in court on March 16, 2011 for proceedings in this matter and in two unrelated matters.  (Fitch Decl., Ex. D at NYC 11, 16; Silverberg Decl., Ex. B at 85-86; 56.1 Stmt. ¶ 22; 56.1 Resp. ¶ 22.)  The plaintiff was ordered to appear in court again on May 18, 2011, and, on that date, the court dismissed the charges in response to the prosecution's offer to dismiss them.  (Fitch Decl., Ex. E at NYC 18-19; see Fitch Decl., Ex. F; 56.1 Stmt. ¶ 23; 56.1 Resp. ¶ 23.)

On August 3, 2011, the plaintiff brought this action against the City of New York, Officer Duran, and several "John Doe" police officer defendants.  (56.1 Stmt ¶ 24; 56.1 Resp. ¶ 24.)  The plaintiff has withdrawn his claims against all of the defendants named in the Complaint except for his claims for false arrest, malicious prosecution, and denial of the right to a fair trial in violation of 42 U.S.C. § 1983 against Officer Duran.  Officer Duran now moves for summary judgment dismissing those claims.

III.

A.

The defendant argues that he is entitled to summary judgment on the claim for false arrest in violation of 42 U.S.C. § 1983 because he had probable cause to arrest the plaintiff for criminal sale of a controlled substance.  In support of this argument, the defendant relies on his observations of the plaintiff's interaction with Perez Sr. as well as the recovery of cash from the plaintiff and drugs from Perez Sr.

Section 1983 claims for false arrest are "substantially the same" as false arrest claims under New York law.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Both claims require a showing that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  See id. at 853 (quoting Broughton v. State, 335 N.E.2d 310, 314 (N.Y. 1975)) (first alteration in original and internal quotation marks omitted); see also Pelayo, 893 F. Supp. 2d at 639.

Probable cause to arrest "is a complete defense to an action for false arrest," under section 1983 and New York law. Weyant, 101 F.3d at 852 (quoting Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)).  The Court examines "the events leading up to the arrest, and then decide[s] whether these

9

historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Smith v. City of N.Y., No. 04 Civ. 3286, 2010 WL 3397683, at *6 (S.D.N.Y. Aug. 27, 2010) (quoting Maryland v. Pringle, 540 U.S. 366, 371 (2003)).  Physical proximity to criminal behavior without more is insufficient to establish probable cause. See Flores v. City of Mount Vernon, 41 F. Supp. 2d 439, 443 (S.D.N.Y. 1999); see also United States v. Moreno, 897 F.2d 26, 32 (2d Cir. 1990) (abrogated on other grounds by Ruggiero v. Krzeminski, 928 F.2d 558, 561-62 (2d Cir. 1991)).

The defendant argues that he had probable cause to arrest the plaintiff based on the following: (i) his alleged observation of the exchange of money and a small object between the plaintiff and Perez Sr.; (ii) Perez Sr.'s possession of crack cocaine; and (iii) the plaintiff's possession of $444 in cash.  However, in his deposition, the plaintiff denied that Officer Duran observed the plaintiff interact with his father at all, and the plaintiff denied that he exchanged anything with his father during their interaction.  At this stage of the proceedings, the Court must resolve all factual discrepancies in the plaintiff's favor.  Accordingly, based on the plaintiff's version of the events, the only evidence that Officer Duran could have had was that the plaintiff had shaken his father's

hand and that his father was later found to possess crack cocaine.

The facts at this stage of the proceedings do not support a finding of probable cause to arrest.  The defendant relies on Smith v. City of New York, No. 04 Civ.3286, 2010 WL 3397683 (S.D.N.Y. Aug. 27, 2010), for the proposition that probable cause exists for the arrest when an officer believes, based on the officer's observations and experience, that a drug transaction has occurred and the suspected buyer is later found to be in possession of illegal drugs.  However, in Smith, it was undisputed that the plaintiff and another party had exchanged money, and the suspected buyer was later found to possess drugs. Id. at *1, 7.  In this case, the parties dispute whether an exchange—other than a handshake—occurred at all.

The defendant claims that Hartzog v. Rabideau, No. 05 Civ. 0554, 2010 WL 2010948 (W.D.N.Y. May 18, 2010), stands for the proposition that an exchange without more can provide probable cause.  However, in Hartzog the prosecution offered evidence at trial that "[o]ne officer witnessed . . . a furtive exchange of something for money."  Id. at *1.  The defendant cites no case that suggests that probable cause to arrest a suspected drug seller exists based on the recovery of drugs from a suspected buyer without evidence of any exchange between a suspected seller and a suspected buyer found to possess drugs.  Compare

11

United States v. Roland, No. 11 Cr. 372, 2012 WL 74989, at *5
(S.D.N.Y. Jan. 10, 2012) (finding probable cause on a motion to
suppress when officers observed the defendant "exchange U.S.
currency for 'small objects from what appeared to be a small
plastic bag'" and the defendant was found to be in possession of
crack cocaine); United States v. Washington, No. 02 Cr. 1574,
2003 WL 21250681, at *1, 3 (S.D.N.Y. May 29, 2003) (finding in
connection with a motion to suppress that there was probable
cause to arrest when officers observed the defendant and another
person exchange an item for money and drugs were recovered from
the defendant); Sam v. Brown, No. 00 Civ. 4170, 2002 WL
31102644, at *1, *4 (E.D.N.Y. Sept. 10, 2002) (denying a claim
for unlawful arrest raised in a petition for a writ of habeas
corpus pursuant to 28 U.S.C. § 2254 because there was probable
cause to arrest when officers observed the defendant retrieve
two plastic Ziploc bags after receiving money from another
person); People v. Martin, 931 N.Y.S.2d 7, at *8-10 (App. Div.
2011), aff'd, 973 N.E.2d 179 (N.Y. 2012) (affirming conviction
and finding probable cause to arrest when "the officer saw [the]
defendant's left hand and the other man's right hand 'touching
one another' for between ten and thirty seconds [and] . . . the
officer observed a plastic bag containing a white substance
'peeking out' from defendant's closed right fist"). That the
plaintiff's father was found to be in possession of crack

12

cocaine after shaking hands with the plaintiff is insufficient to establish probable cause to arrest.  See Flores, 41 F. Supp. 2d at 443.

Accordingly, there is insufficient evidence at this stage of the proceedings to establish that the defendant had probable cause to arrest the plaintiff, and the defendant's motion for summary judgment on the claim of false arrest in violation of section 1983 is **denied**.

**B.**

The defendant moves for summary judgment on the plaintiff's claim for malicious prosecution in violation of 42 U.S.C. § 1983.  The defendant argues that the record does not establish lack of probable cause, actual malice, or a deprivation of liberty that amounts to a violation of the plaintiff's Fourth Amendment rights, which are elements necessary to a claim for malicious prosecution.

To establish a claim for malicious prosecution under section 1983, a plaintiff must establish the elements of a malicious prosecution claim under New York state law, as well as a violation of the plaintiff's rights under the Fourth Amendment.  Manganiello v. City of N.Y., 612 F.3d 149, 161 (2d Cir. 2010).  A claim for malicious prosecution under New York state law requires "(1) the initiation or continuation of a

13

criminal proceeding against the plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Manganiello, 612 at 161 (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)) (internal quotation marks and citation omitted); see Alcantara v. City of N.Y., 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009).  A claim for malicious prosecution under section 1983 requires the additional element of "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." Rohman v. N.Y.C. Transit Auth. (NYCTA), 215 F.3d 208, 215 (2d Cir. 2000); see Alcantara, 646 F. Supp. 2d at 457.

It is undisputed that the plaintiff has satisfied the first two elements of his malicious prosecution claim.  The parties agree that the defendant commenced a criminal proceeding against the plaintiff and that the criminal proceeding was terminated in the plaintiff's favor.  As to the third element of the plaintiff's claim for malicious prosecution, there are issues of fact as to whether there was probable cause to arrest the plaintiff, and therefore, there are issues of fact as to whether there was probable cause to commence the criminal proceedings against the plaintiff.  Accordingly, the issues are (i) whether the defendant acted with actual malice in initiating the prosecution of the plaintiff, and (ii) whether the plaintiff

14

suffered a sufficient post-arraignment deprivation of liberty to implicate his Fourth Amendment rights.

### i.

The defendant argues that the plaintiff's malicious prosecution claim fails because the evidence does not support the inference that the defendant acted with actual malice in initiating the prosecution of the plaintiff.  Malice does not have to be actual spite or hatred, but means only "that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir. 1996) (quoting Nardelli v. Stamberg, 377 N.E.2d 975, 976 (N.Y. 1978)).  It is well established that "[a] lack of probable cause generally creates an inference of malice." Boyd v. City of N.Y., 336 F.3d 72, 78 (2d Cir. 2003).

The defendant argues that because he had probable cause to believe that the plaintiff had committed the felony of criminal sale of a controlled substance there can be no showing of malice.  However, there are issues of fact which if resolved in the plaintiff's favor, as required at this stage of the proceedings, indicate that there was no probable cause to conclude that the plaintiff had committed that offense. Moreover, construed in the light most favorable to the

plaintiff, there would be evidence that the defendant provided false testimony to the District Attorney's office, including his sworn statement that he witnessed the plaintiff and his father exchange money and a small object that was crack cocaine, and that the defendant's statement was the basis for the plaintiff's prosecution.  Resolving the factual issues in the light most favorable to the plaintiff, there would be sufficient evidence to satisfy the malice prong of the plaintiff's malicious prosecution claim.

**ii.**

The defendant also argues that the plaintiff's claim for malicious prosecution fails because the plaintiff did not suffer a sufficient restraint on his liberty to satisfy the seizure element of a section 1983 malicious prosecution claim.  The Second Circuit Court of Appeals has noted that the seizure element can be satisfied by "any post-arraignment deprivations of liberty (such as being bound-over for trial)."  Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 117 (2d Cir. 1995); see Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013) (reversing dismissal of a claim for malicious prosecution on a motion for summary judgment when the plaintiff had to make three post-arrest court appearances in connection with an arrest for disorderly conduct).

16

In support of its argument that the plaintiff has not
satisfied the seizure element of a malicious prosecution claim,
the defendant relies on cases finding that "a single court
appearance . . . is insufficient to support a Section 1983
malicious prosecution claim."  See, e.g., Porat v. Lincoln
Towers Cmty. Ass'n, No. 04 Civ. 3199, 2005 WL 646093, at *1, 3
(S.D.N.Y. Mar. 21, 2005) aff'd, 464 F.3d 274 (2d Cir. 2006)
(finding seizure element not satisfied when the plaintiff had to
make one court appearance in connection with "an appearance
ticket for trespassing").  In Murphy v. Lynn, the Court of
Appeals determined that a defendant who faced travel
restrictions and was compelled to appear in court multiple times
in connection with charges of disorderly conduct, resisting
arrest, and two counts of felony assault satisfied the seizure
element.  118 F.3d 938, 942, 946 (2d Cir. 1997).  Some courts in
this circuit have read Murphy as finding the seizure element
satisfied by either restrictions on travel or a compulsion to
attend court proceedings.  See, e.g., Genia v. N.Y. State
Troopers, No. 03 Civ. 0870, 2007 WL 869594, at *15 (E.D.N.Y.
Mar. 20, 2007) ("[D]eclin[ing] to read Murphy to require an
affirmative order restricting travel," and finding the seizure
element satisfied by five court appearances and the general
requirement under New York law that a defendant released on the
defendant's own recognizance ordinarily remain in the State of

17

New York); Sassower v. White Plains, 992 F. Supp. 652, 656
(S.D.N.Y. 1998) ("Defendants misconstrue the Murphy decision as
requiring both an infringement on a plaintiff's right to travel
and required court appearances . . . . [T]he Murphy court never
suggests that it required a combination of the two conditions to
constitute a 'seizure.'  Instead, the Second Circuit made clear
that each condition, independent of the other, constitutes a
'seizure.'").  Other courts in this Circuit have found that
travel restrictions and court appearances are both necessary to
satisfy the seizure element.  See Dellutri v. Vill. of Elmsford,
895 F. Supp. 2d 555, 570-71 (S.D.N.Y. 2012) (collecting cases);
see also Burg v. Gosselin, 591 F.3d 95, 98 (2d Cir. 2010).

It is not necessary to determine whether Murphy requires
both travel restrictions and court appearances to satisfy the
seizure element because it is uncontested that the plaintiff was
compelled to appear in court in connection with the criminal
proceedings underlying his felony prosecution, and the evidence
supports an inference that travel restrictions were imposed when
the plaintiff was released on his own recognizance.  New York
law provides that "[u]pon ordering that a principal be released
on his own recognizance, the court must direct him to appear in
the criminal action or proceeding involved whenever his
attendance may be required and to render himself at all times

18

amenable to the orders and processes of the court." N.Y. Crim.
Proc. Law § 510.40 (McKinney).

It is undisputed that after his arraignment the plaintiff
was ordered released on his own recognizance. The plaintiff
represents that travel restrictions necessarily accompany
release on one's own recognizance pursuant to New York Criminal
Procedure Law § 510.40. Accordingly, it appears that at this
stage of the proceedings the plaintiff's release on his own
recognizance necessarily required the plaintiff to comply with
travel restrictions. See Rohman, 215 F.3d at 216 (finding that
under section 510.40 of the New York Criminal Procedure Law a
defendant released on his own recognizance "must ordinarily
remain in the state.").

The defendant also argues that the plaintiff was only
required to appear in court on a single occasion—when the charge
against him was dismissed on May 18, 2011—and that this single
court appearance is an insufficient restraint on the defendant's
liberty to satisfy the elements of a malicious prosecution
claim. However, the plaintiff was also required to appear in
court on March 16, 2011. The defendant argues that this Court
should not rely on the appearance the plaintiff made on March
16, 2011 because he was required to appear in court that day not
only on the charge of selling a controlled substance to his
father, but on other charges as well. However, as the defendant

admitted at argument on this motion, there is no case that supports the proposition that simply because the plaintiff was also required to appear in court on an unrelated matter the appearance that was required for the felony charge relevant to this case is not a seizure within the meaning of the Fourth Amendment.  (See Tr. of Oral Arg. at 17.)  If the plaintiff had failed to appear on March 16, 2011, he would have violated the court's order to appear in connection with the felony charge of selling narcotics to his father.

The defendant also relies on Burg v. Gosselin, 591 F.3d 95, 98 (2d Cir. 2010), to support the proposition that the post-arraignment restraints on the plaintiff in this case were insufficient to constitute a seizure for the purposes of the Fourth Amendment.  Burg does not support the defendant's argument.  In Burg, the Court of Appeals held that "a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure."  Id. at 101.  The Court of Appeals distinguished the burdens imposed on a defendant facing serious criminal charges, such as the felony assault charges that the plaintiff in Murphy faced, from those imposed on a defendant appearing on a non-felony summons.  Id. at 98.  Moreover, as the Court of Appeals subsequently explained in Swartz, the plaintiff in Burg only

sought damages for the summons, and there was no claim of malicious prosecution.  Swartz, 704 F.3d at 112.

The defendant also relies on Faruki v. City of N.Y., No. 10 Civ. 9614, 2012 WL 1085533 (S.D.N.Y. Mar. 30, 2012), aff'd 2013 WL 452536 (2d Cir. Feb. 7, 2013).  However, Faruki, was also a case that involved only two court appearances in response to a summons in a non-felony proceeding for trespass.  Id. at *1-2.  The Court of Appeals noted, citing Burg, that a "pre-arraignment, non-felony summons requiring no more than a later court appearance," did not constitute a violation of the Fourth Amendment.  Id. at *1.

In this case, the plaintiff had been arraigned on a felony complaint and was required to appear in court on two subsequent occasions.  The plaintiff was also required to comply with travel restrictions incident to his release on his own recognizance.  The defendant points to no comparable case where similar conditions were insufficient restraints on a person's liberty for purposes of the Fourth Amendment.

Accordingly, the defendant's motion for summary judgment on the malicious prosecution claim is **denied**.


**C.**

The defendant has moved for summary judgment on the plaintiff's claim for denial of the right to a fair trial.

21

Initially, the defendant argues that the plaintiff cannot simultaneously maintain a claim for a denial of the right to a fair trial and a claim for malicious prosecution because the claims are duplicative. However, the Court of Appeals has permitted those claims to be asserted simultaneously. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129-31 (2d Cir. 1997); see also Brandon v. City of N.Y., 705 F. Supp. 2d 261, 275-76 (S.D.N.Y. 2010).[1]

The defendant also argues that the plaintiff has failed to satisfy the requirements for his claim of denial of the right to a fair trial. A person suffers the denial of the right to a fair trial if: "(1) [an] investigating official (2) fabricate[d] evidence (3) that is likely to influence a jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." Jovanovic v. City of N.Y., 486 F. App'x 149, 152 (2d Cir. 2012) (summary order). The Court of Appeals has explained that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a

---

[1] In Jovanovic v. City of N.Y., 486 F. App'x 149, 152 (2d Cir. 2012) (summary order), the Court of Appeals affirmed the grant of summary judgment for the defendants on a claim of malicious prosecution and a claim for denial of the right to a fair trial, but did not suggest that the claims should be dismissed as duplicative.

fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." Ricciuti, 124 F.3d at 130.

There are genuine issues of material fact as to whether the defendant, who is an investigating officer, provided to the prosecution false information that served as the basis for the plaintiff's prosecution. These issues cannot be resolved on a motion for summary judgment. See, e.g., Brandon, 705 F. Supp. 2d at 276; Douglas v. City of N.Y., 595 F. Supp. 2d 333, 347 (S.D.N.Y. 2009) ("[A] reasonable jury could find defendants . . . forwarded false information to the Bronx district attorney, thereby violating plaintiff's constitutional right to a fair trial."); Stewart v. City of N.Y., No. 06 Civ. 15490, 2008 WL 1699797, at *10 (S.D.N.Y. Apr. 9, 2008) ("[T]here is, at a minimum, a question of fact as to whether [the officer] falsely told an assistant district attorney and the grand jury that [the plaintiff] had acted as a lookout on the day of the drug sale."); see also Schiller v. City of N.Y., No. 04 Civ. 7922, 2008 WL 200021, at *9-10 (S.D.N.Y. Jan. 23, 2008).

The defendant argues that the evidence in the record is insufficient to support the inference that any false information provided to the prosecution by the defendant would be likely to influence a jury. However, there is evidence in the record to support the plaintiff's allegations that Officer Duran included

23

false information in his police report, which he provided to the District Attorney.  Construing the evidence in the light most favorable to the plaintiff for purposes of this motion, the evidence indicates that the defendant could not have observed the plaintiff exchange crack cocaine for money with his father because no such exchange occurred, and therefore, the defendant must have provided false information to the prosecutor when the defendant provided his arrest report and sworn complaint. Accordingly, a question of fact remains regarding whether Officer Duran provided false information to the District Attorney's Office that caused the plaintiff's deprivation of liberty.

The defendant also argues that the plaintiff did not suffer a sufficient deprivation of liberty to maintain his claim for a denial of the right to a fair trial.  The defendant offers the same arguments he made in connection with the malicious prosecution claim and the arguments fail for the same reasons discussed above.

Therefore, the defendant's motion for summary judgment on the plaintiff's claim for a denial to the right to a fair trial is **denied**.

IV.

The defendant argues that he is entitled to qualified immunity.  Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  If a right is clearly established, qualified immunity will nonetheless function effectively as a shield from liability when "officers of reasonable competence could disagree on whether the conduct at issue was legal." Munoz v. City of N.Y., No. 04 Civ. 1105, 2008 WL 464236, at *6 (S.D.N.Y. Feb. 20, 2008); see Malley v. Briggs, 475 U.S. 335, 341 (1986); Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991); see also Pelayo, 893 F. Supp. 2d at 641.

There is no question that the rights to be free from false arrest and malicious prosecution were clearly established at the time of the incident. Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995).  The right to a fair trial was also clearly established at the time of the incident. See Ricciuti, 124 F.3d at 130.  The defendant argues that these rights were not clearly established at the time of the incident because the factors that provide probable cause to arrest were not clearly established at the time of the plaintiff's arrest.  However, to find a right

25

clearly established for purposes of qualified immunity "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011).  As discussed in connection with those claims, Second Circuit precedent has placed the right to be free from false arrest and malicious prosecution and the right to a fair trial "beyond debate."  See id.

If a right is clearly established, an officer will still be entitled to qualified immunity if the officer's "actions were not objectively unreasonable at the time they were taken." Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997); see Pelayo, 893 F. Supp. 2d at 641.  The defendant argues that, on this record, it was not objectively unreasonable for Officer Duran to believe he had probable cause to arrest the plaintiff.  If reasonable officers could disagree as to whether probable cause existed for the plaintiff's arrest, the defendant is entitled to qualified immunity.  Lennon, 66 F.3d at 423-24.

At this stage of the proceedings the Court is required to draw all reasonable inferences in favor of the plaintiff.  In the light most favorable to the plaintiff, the evidence suggests that the defendant and other officers observed only a handshake and high-five between the plaintiff and his father and that the plaintiff's father was later found to possess crack cocaine.

The defendant's qualified immunity arguments rely on the proposition that the defendant witnessed at least an exchange of some object for money, but that proposition is disputed.  Based on the testimony of the plaintiff and his father, it would have been impossible for the defendant to have observed what he swore he did because it never happened.  The defendant essentially asks the Court to accept his testimony about what he saw, which cannot be done on a motion for summary judgment.

It is objectively unreasonable for an officer to believe that there was probable cause to arrest an alleged drug seller on the basis of a handshake and later recovery of drugs from an alleged drug buyer.  The defendant has offered no case that suggests that similar circumstances would provide probable cause to arrest.  This is not a case where the defendant claims he had particularized reasonable suspicion to stop a suspect to inquire about the suspicious circumstances.  See Curry v. City of Syracuse, 316 F.3d 324, 335-36 (2d Cir. 2003).  Rather, the defendant claims that he had qualified immunity to arrest the plaintiff based on what amounts to simply suspicious circumstances.

In this case, accepting the plaintiff's testimony, the defendant arrested the plaintiff based solely on a suspicious handshake with his father who was subsequently found to have drugs.  Although a question of fact may change the calculation

27

with regard to whether the defendant had arguable probable cause to arrest, at this stage of the proceedings, accepting the plaintiff's version of events, the Court cannot conclude that the defendant had arguable probable cause to arrest such that he would be entitled to qualified immunity.

Accordingly, the defendant's motion for summary judgment on the basis of qualified immunity is **denied**.

## CONCLUSION

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  The defendant's Motion for Summary Judgment is **denied**.  The Clerk is directed to close **Docket No. 26**.

**SO ORDERED.**

Dated:    **New York, New York**
          **July 2, 2013**                  _____/s/_____
                                                **John G. Koeltl**
                                        **United States District Judge**